IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No: 4:21CR3084 |
| | ) | |
| Plaintiff, | ) | STATEMENT OF OBJECTIONS |
| | ) | TO MAGISTRATE'S FINDINGS AND |
| vs. | ) | RECOMMENDATIONS AND |
| | ) | SUPPORTING BRIEF |
| MONTRAY QUINTIN PATTON, | ) | |
| | ) | |
| Defendant. | ) | |

Montray Quintin Patton, ("Patton"), the Defendant, by and through his attorney, hereby objects to the Findings and Recommendation submitted by the Magistrate Judge found in this matter as filing No. 64. The Findings and Recommendations recommend that the District Court deny Patton's Motion to Dismiss. Patton requests that the District Court conduct a *de novo* review of the record, and ultimately grant his Motion to Dismiss the Indictment.

### INTRODUCTION

Patton was Indicted pursuant to an alleged violation of 18 U.S.C. 922(k), which states that, "It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce." Patton asserts that this statute is unconstitutional as a restriction on his Second Amendment Constitutional Right.

The Magistrate disagreed with this assertion, and in the Findings and Recommendations found that 922(k) is consistent with the Second Amendment's text and therefore constitutional. The Magistrate found that the conduct to be regulated, possessing a firearm with an obliterated serial number, is not conduct that is protected by the Second Amendment. The Magistrate went on

1

to state that even if the conduct found in 922(k) is protected by the Second Amendment, Patton's Motion to Dismiss further fails because regulating firearms through the inclusion of serial numbers on firearms is consistent with this Nation's historical tradition. Consequently, the Magistrate recommended that Patton's Motion to Dismiss be denied. Patton objects.

## FACTS OF THE CASE

The facts of this case been submitted by Counsel, the Government, and the Magistrate. In an effort to be efficient and to avoid redundancy and since the Court will review the Briefs already submitted (filings 58 and 63), Counsel for Mr. Patton will provide only those minimal facts relevant to this issue for the Court. Mr. Patton was a passenger in a rental vehicle traveling from Kentucky to Washington after visiting his brother's grave. Patton had stopped in Chicago and picked up his cousin, Mr. Hart, to assist with the remainder of the drive. While in Seward County, Nebraska, law enforcement stopped the vehicle. The officer asserted that the failure to use a turn signal within 100 feet of the turn was the reason for the stop. Both Patton and Mr. Hart were questioned by the deputy during the stop. After speaking with Patton and Mr. Hart, the Deputy asked both men for consent to search the vehicle, which they both denied. The Deputy then called for a K-9 officer to come to search the vehicle. The dog alerted to the odor of narcotics, so a probable cause search of the vehicle was conducted. During that search, six Palmetto State Armory lower receivers to AR rifles were located. The serial number to each receiver had been removed. Patton was questioned regarding the missing serial number. He reported that he bought them from a man in Kentucky, and he was unaware the serial number had been removed. Patton was subsequently arrested for possession of a defaced firearm and then ultimately federally indicted.

## ARGUMENT

1. ***Patton Objects to the Magistrate's Finding that the conduct to be protected according to***

> ***step one in Bruen is the Possession of a firearm with removed or obliterated serial numbers, which the Magistrate then found is not protected conduct pursuant to the Second Amendment.***

Patton asserts that the Magistrate erred in its analysis of identifying the conduct to be protected in order to answer step one of *Bruen*. The Magistrate found that the conduct in question was the possession of a firearm with obliterated serial numbers. However, Patton asserts that the conduct to be protected by the Second Amendment is only the possession of a firearm, which is protected by the Second Amendment. "In any event, *Bruen*'s first step asks a strictly textual question with only one answer: the Second Amendment's plain text covers possession of a firearm." (*United States v. Bullock,* No. 3:18-CR-165-CWR-FKB (S.D. Miss. June 6th, 2023); quoting *United States v. Charles*, No. MO:22-CR-154-DC, 2022 WL 4913900, at *2 (W.D. Tex. Oct. 3, 2022)). The first step asks the Court to look at the conduct of the person accused and not the status of the person performing the conduct. (*Bullock*, pg. 45). Patton, using *Heller* as a guide, opines that the mere possession of the firearm, with or without the serial number, is the conduct to be analyzed and is protected by the Second Amendment. "*Heller* already resolved that merely possessing a firearm within the home is the core of the right protected by the Second Amendment." See *Heller*, 554 U.S. at 629-30. Therefore, as noted in Patton's Brief in Support of the Motion to Dismiss, it can be found that step one is satisfied as the possession of a firearm is conduct protected by the Second Amendment.

The Magistrate then found that no further research was necessary on this issue and moved on to an alternative possibility.

2. ***Patton objects to the Magistrate's Finding and Recommendation that the regulation of the serial number on a firearm is consistent with our Nation's history. Patton asserts the***

3

***government failed to provide sufficient support and evidence of historical national tradition for the regulation.***

In 2008, the United States Supreme Court "decided that the Second Amendment guarantees individuals the right to keep and bear arms in their home for self-defense." (*United States v. Bullock*, 3:18-CR165-CWR-FKB (2023); See *District of Columbia v. Heller*, 554 U.S. 570 (2008)). That premise is the basic starting point. Any restrictions on that basic premise, according to the recent *Bruen* decision, are presumptively unlawful unless the Government can show that such a restriction is consistent with our Nation's historical tradition on the regulation of firearm. The statute in question, 18 U.S.C. 922, has now had the many subsections picked apart and scrutinized by Federal District and Appellate Courts.

The constitutionality argument asserted by Patton, then rests on step two of *Bruen*, whether the firearm restriction on the protected conduct (possession of a firearm) is supported by historical tradition of similar laws which ban the possession of a firearm that has had the serial number removed. The burden is on the government to prove the historical tradition found in step two. "The burden then shifts to the government. It cannot 'simply posit' that § 922(g)(1) 'promotes an important interest.' *Bruen*, 142 S. Ct. at 2126. Instead, 'the government must demonstrate that [§ 922(g)(1)] is consistent with this Nation's historical tradition of firearm regulation.'" (*Bullock*, pg. 64; quoting *Bruen*, 142 S. Ct. at 2126).

Patton asserts that the Government failed to meet its burden of proving the history and tradition of the restriction of gun ownership when the firearm does not contain a serial number. "In footnote six, *Bruen* explained that judges should 'follow the principle of party presentation' and are 'entitled to decide a case based on the historical record compiled by the parties.' 142 S. Ct. at 2130 n.6. Judges 'are not obliged to sift the historical materials for evidence to sustain New

4

York's statute,' it reasoned. *Id.* at 2150. 'That is [the government's] burden.'" (*Bullock,* pg. 34; *Id.*).

The Magistrate recommended this Court to find that the Government did meet its burden finding such a restriction on ownership of a firearm without a serial number to be rooted in historical tradition. Patton disagrees and asserts that the Magistrate's analysis of the historical information on tradition is flawed. The Second and Fourteenth Amendments were ratified in 1791 and 1868. It wasn't until the establishment of the Federal Gun Control Act of 1968 that serial numbers were required to be placed on firearms manufactured for sale. So, a question would be the purpose of the serial number and whether a different mechanism was used historically in the United States.

The Magistrate asserted that during colonial times at least three other states had similar regulations on ways to trace firearms. In support of that argument, the text from two prior laws were attached to the Magistrate's Finding and Recommendations. When reviewing those attachments, it is important to identify the reason for such a restriction. The District Court in *Bullock* noted the lack of information from an historian was a fatal flaw in the Government's argument as it failed to present any evidence in its three-page reply to support the historical analysis. I am not a historian and nor do I pose to be, but I am able to legally analyze the information presented. In looking at the example from Massachusetts, it appears that the regulation was enacted to ensure that guns are actually safe to use. Is this because at that time citizens were making their own guns with any means necessary? Similar to ghost guns now available on the Internet in which a citizen can separately buy all of the pieces of a gun and then put it together into a final product. Interestingly enough, ghost guns are not prohibited by the federal government, despite the lack of a serial number, and it was only recently that changed. Private citizens can own

5

a ghost gun, but after August 2023 the gun will require a serial number if being sold.

In looking at the second attachment for a regulation from Maine, reoccurring language notes that the section applies to "new and unused guns." Another good question to uncover when looking to historical support, would be why did this only apply to new or never used firearms? Also, how would then that be relevantly similar to the regulation requiring a serial number? Additionally, both of those laws carried a possible penalty of a fine, which is more in line with an administrative punishment than a criminal one.

A current purpose of the inclusion of a serial number is to assist with solving crimes when a gun is stolen or used to commit a crime. Information on the gun can be found through identifying the owner of the gun or the last location of the gun when looking up the associated serial number. So, the addition of a serial number is to provide law enforcement another tool to utilize when collecting evidence of a crime. The exclusion of a serial number should not automatically cause one to believe criminal activity is afoot, as the Government stated in its reply brief noted. (Government's Brief, pg. 9).

In *Bullock*, the District Court looked to the dissent in *Kanter v. Barr*, which researched founding-era disarmament proposals and identified that, "The concern common to all three is not about felons in particular or even criminals in general; it is about threatened violence and the risk of public injury." (*Bullock*, pg. 25; See *Kanter v. Barr*, 919 F.3d 437, 456 (7th Cir. 2019)). The deletion of a serial number, without more, does not support a risk of violence. The dissent in *Kanter* noted that a person's history or characteristics could make that person more likely to misuse firearms, which would then support a risk to public safety. *Bullock*, pg. 27. This is in contrast to the sections of 922 that look to the status of the individual, such as whether the person is a felon or has mental health concerns.

*Bullock* and *Range* both found 18 U.S.C. 922(g) unconstitutional using an as applied standard, which is not the case here. "In an as-applied challenge, the court asks whether a law with some permissible uses 'is nonetheless unconstitutional as ap- plied to appellant's activity,' *Spence v. Washington*, 418 U.S. 405, 414 (1974) (reversing Mr. Spence's criminal conviction); see *Street v. New York*, 394 U.S. 576, 594 (1969) (reversing Mr. Street's criminal conviction)." (*Bullock,* pg. 12). Although Patton is making a facial challenge and not an as applied challenge, the cases still provide much information and insight into the statute that are applicable in Patton's case. Patton has attached both cases to this Objection for the Court's convenience. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

## CONCLUSION

For the foregoing reasons, the Defendant, Montray Patton, respectfully requests that this Court decline to adopt the Magistrate's Findings and Recommendation. Instead, this Court should find that 18 U.S.C. 922(k) is unconstitutional, and further grant Patton's Motion to Dismiss the Indictment. Patton respectfully requests that this court grant his Motion to Dismiss in its entirety.

Respectfully Submitted,
Montray Quintin Patton, Defendant

By: *s/ Candice C. Wooster*
Candice C. Wooster, #25318
Brennan, Nielsen, & Wooster Law Offices
610 J Street, Suite 200
Lincoln, NE 68508
Phone: 402-441-4848
Fax: 402-441-4840
candice@brennannielsenlaw.com

CERTIFICATE OF SERVICE

      I hereby certify that on July 26th, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to AUSA Matthew Molsen.

      By:   *s/ Candice C. Wooster*
            Candice C. Wooster, #25318