IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MONTRAY QUINTIN PATTON,<br><br>Defendant. | 4:21-CR-3084<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the defendant's objection (filing 77) to the Magistrate Judge's findings and recommendation (filing 64) recommending that the defendant's motion to dismiss (filing 58) be denied. The Court has conducted a de novo review of the motion to dismiss, pursuant to 28 U.S.C. § 636(b)(1). The defendant's objection will be overruled, and the Court will adopt the Magistrate Judge's recommendation.

The defendant was indicted under an alleged violation of 18 U.S.C. §§ 922(k) and 924(a)(1)(B), which makes it "unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered," punishable by a fine and not more than five years of imprisonment. The defendant now challenges the constitutionality of § 922(k), arguing that punishing possession of a firearm with an obliterated serial number is a violation of his Second Amendment right.[1]

---

[1] The particular facts of the defendant's case are largely irrelevant to his facial constitutional challenge. Summarized briefly, the defendant was a passenger in a rental vehicle driving in Seward County, Nebraska. Filing 64 at 1. Law enforcement stopped the vehicle for a traffic violation, and a police dog indicated narcotics were present. *Id.* Law enforcement searched the vehicle and recovered six rifles with removed serial numbers. *Id.* The defendant faces no other charges.

The Supreme Court explicitly recognized an individual right to keep and bear arms in *Dist. of Columbia v. Heller,* 554 U.S. 570, 595 (2008). Most recently, the Court clarified how to identify the constitutional protections of the Second Amendment in *N.Y. State Rifle & Pistol Ass'n v. Bruen*:

> [W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

142 S. Ct. 2111, 2126 (2022) (quoting *Konigsberg v. State Bar of Cal.,* 366 U.S. 36, 50 (1961)). In so holding, the Supreme Court explicitly rejected a widely used two-step approach, where courts employed both historical analysis and means-end scrutiny. *Heller*, the Court explained, did "not support applying means-end scrutiny in the Second Amendment context," and a firearm regulation is only constitutional if it is consistent with the Nation's historical tradition. *Id.* at 2126-27; *see also Range v. Att'y Gen. U.S.*, 69 F.4th 96, 100 (3d Cir. 2023).

The *Bruen* decision inspired a surge of constitutional challenges to federal gun regulations. So far, § 922(k) has survived these challenges in all but one court. *U.S. v. Bradley,* no. 2:22-cr-98, 2023 WL 2621352, at *3-5 (S.D. W.Va. March 23, 2023); *U.S. v. Serrano,* no. 21-cr-1590, 2023 WL 2297447, at *11-13 (S.D. Cal. Jan. 17, 2023); *U.S. v. Tita,* no. 1:21-cr-334, 2022 WL 17850250, at *7 (D. Md. Dec. 22, 2022); *U.S. v. Reyna,* no. 3:21-cr-41, 2022 WL

17714376, at *5 (N.D. Ind. Dec. 15, 2022); *U.S. v. Holton*, no. 2:21-cr-482, 2022 WL 16701935, at *3-5 (N.D. Tex. Nov. 3, 2022); *but see U.S. v. Price*, 635 F. Supp. 3d 455, 460 (S.D. W.Va. 2022).

Under *Bruen*, the only inquiry is "whether modern firearms regulations are consistent with the Second Amendment's *text and historical understanding*." 142 S. Ct. at 2131 (emphasis added). Some district courts have separated the "text" and "historical understanding" analyses, creating a *new* two-step approach. *See, e.g., Reyna*, 2022 WL 17714376, at *4-5. Each court (except the outlier, *Price*) determined that § 922(k) was constitutional under both steps: The conduct regulated is not covered by the plain text of the Amendment, and the regulation is consistent with the Nation's historical traditions. *See, e.g., id.*

The district courts to analyze § 922(k) post-*Bruen* determined that § 922(k) regulated weapons "not commonly" used by "law-abiding citizens" for "self-defense," and such conduct is not presumptively protected under the plain text of the Second Amendment. *See, e.g., Reyna*, 2022 WL 17714376, at *5. Some of those courts also reasoned that prohibitions on weapons based on "non-functional characteristics," such as serial numbers, regulate possession in a manner that does not implicate the Second Amendment, because other firearms are still available for self-defense, and there is no lawful purpose for possessing a firearm with an obliterated serial number. *See, e.g., id.* (citing *U.S. v. Marzzarella*, 614 F.3d 85, 84 (3d Cir. 2012) (*abrogated by Range*, 69 F.4th at 100)).

But the Supreme Court has been quite clear that the "Second Amendment extends, prima facie, to *all* instruments that constitute bearable arms." *Heller,* 554 U.S. at 582 (emphasis added). The Supreme Court's emphasis on "law-abiding citizens" using firearms for "self-defense" speaks to the *historical tradition* of the right to keep bear arms, and historical analysis

is necessary to interpret the scope of conduct protected by the Second Amendment and the limits of the government's authority to regulate the right. *See Heller,* 554 U.S. at 595; *Range,* 69 F.4th at 102. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's *conduct* falls outside the Second Amendment's *'unqualified* command.'" *Bruen,* 142 S. Ct. at 2126 (quoting *Konigsberg,* 366 U.S. at 50) (emphasis added).

In *Heller*, the Supreme Court looked to history and tradition when evaluating the scope of the Second Amendment. According to *Heller*, the Second Amendment protects the rights of "the people" to keep and bear "weapons 'in common use' today for self-defense." *See U.S. v. Avila,* no. 22-cr-224, 2023 WL 3305934, at *4 (D. Colo. May 8, 2023) (citing *Bruen,* 142 S. Ct. at 2134 (citing *Heller*, 554 U.S. at 580)). The *Heller* Court relied on history and tradition to reach those conclusions:

> [T]he Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes . . . . That accords with the historical understanding of the scope of the right . . . . From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.

*Heller,* 554 U.S. at 625-627. This Court, then, cannot determine whether a weapon is "typically possessed by law-abiding citizens for lawful purposes" without a historical lens. *See id.; Range,* 69 F.4th at 101-02. The scope of the right, and whether it includes possession of a firearm with an obliterated serial

number, must be scrutinized by historical analogy.[2]

The Court must determine if a historical regulation and a modern regulation are "relevantly similar" by considering "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen, 142 S. Ct. at 2132*. Regulations targeting longstanding problems must be "distinctly similar" to a historical analogue. *Id.* at 2131. But "modern regulations that were unimaginable at the founding" need only be "relevantly similar" to one. *Id.* at 2132. "Whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified are central considerations when engaging in an analogical inquiry." *Id.* at 2133 (quotations omitted).

The government has met its burden showing that governments regulated weapons in a manner "distinctly similar" to § 922(k) as early as 1805. The government referenced an early-19th century Massachusetts law imposing a fine for any person who "shall falsely forge or alter the stamp of any prover of fire-arms . . . impressed on any musket or pistol barrel." Filing 64 at 15. And, the law penalized knowingly selling, delivering, or purchasing "any musket or pistol . . . which shall not have the marks of proof." Filing 64 at 14-15. The government also provided a regulation from 1830 in Maine requiring barrels of gunpowder to be "proved" for safety, and requiring those barrels to be marked with a number of proof to indicate compliance with the laws. Filing 64 at 11.

These laws show a distinct similarity to § 922(k). "Marks of proof" are synonymous with serial numbers in this context. While the scope of § 922(k) is

---

[2] That standard may, or may not, make sense. The Court is sympathetic to other courts that have endeavored to craft a functional, reasonable rubric for these cases. But this Court is not at liberty to ignore or extend the clear pronouncement of *Bruen*.

broader than selling or purchasing weapons without serial numbers, it is a logical extension of these laws that individuals may not possess, in any manner, an object whose compliance with local laws cannot be confirmed. The government's proffered regulations are sufficiently analogous to punishing individuals who knowingly possess firearms with missing, altered, or obliterated serial numbers.

The defendant asserts that the intentions behind the early-19th-century laws and § 922(k) are not sufficiently analogous to justify the enforcement of § 922(k). Put another way, the defendant argues that while the means of the regulations are similar, the ends are not. "The goal of § 922(k) . . . is to assist law enforcement by making it possible to use the serial number of a firearm recovered in a crime to trace and identify its owner and source." *Marzzarella,* 614 F.3d at 98. And the goals of the proffered historical regulations, according to the defendant, were focused on safety. *See* filing 77 at 5. The defendant also asserts that the penalties of § 922(k)—prison time or a fine—are not similar enough to the "administrative punishment" (a fine) of the proffered regulations.

The Court disagrees with the defendant. The use of serial numbers, on antebellum barrels of gunpowder or on contemporary firearms, aid in enforcement and ensure compliance with commercial, safety, and criminal laws. In 1805 and today, a person may be required to prove that they obtained a firearm legally, and that the firearm is compliant with commercial, safety, and criminal laws. Regulations passed to ensure safety are sufficiently analogous to laws passed to aid in enforcing criminal laws (which, not coincidentally, also ensure safety). The inconsistency in punishments is unremarkable, and does not destroy the "distinct[]" similarities between the modern regulation and the historical analogue. *Bruen,* 142 S. Ct. at 2131.

The American Revolution-era regulations proffered by the government

indicate that the original understanding of the Second Amendment does not include a right to possess a weapon which cannot be proven to comply with the laws of a jurisdiction. So, the government demonstrated that § 922(k)'s "burden on the right of armed self-defense" is consistent with historical firearm regulations. *Id.* at 2133. The right to keep and bear arms does not extend to the defendant's conduct: possessing firearms with characteristics which frustrate the government's ability to ensure compliance with commercial, safety, and criminal laws.

The defendant's alleged conduct is not protected by the Second Amendment, based on the original understanding of that right. *See id.* at 2126. The challenged regulation, § 922(k), does not unjustifiably burden the defendant's constitutional right. For these reasons,

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation and Order (filing 64) is adopted.

2. The defendant's objection (filing 77) is overruled.

3. The defendant's motion to dismiss (filing 58) is denied.

Dated this 26th day of September, 2023.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
Senior United States District Judge